IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


WARREN RIVERA,

           Plaintiff,

v.                                              CIV 14-0996 LH/KBM
                                              CR  11-1204 LH

UNITED STATES OF AMERICA,

           Defendant.


## PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Plaintiff Warren Rivera's (Rivera)

Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person

in Federal Custody (*Doc. 1*) filed on November 3, 2014, and fully briefed on February 9,

2015, and on Rivera's Motion to Amend (*Doc. 11*) filed on February 9, 2015.[1] The

Honorable C. LeRoy Hansen has referred this case to me to conduct hearings, if

warranted, including evidentiary hearings, and to perform any legal analysis required to

recommend to the Court an ultimate disposition of the case. *Doc. 3.* For the reasons set

forth below, the Court finds that the record conclusively establishes that Rivera is not

---

[1] In Rivera's Motion to Amend, he states: "Rivera now files this motion to amend and replies to the Government's response regarding his arguments of ineffective counsel during the sentencing process." *Doc. 11* at 1. Accordingly, Plaintiff's Motion to Amend is more properly characterized as a surreply. Our local rules require leave of the Court to file a surreply, *see* D.N.M.LR-Civ. 7.4(b), however, Rivera did not seek leave of the court. While the Court is mindful that it must construe the filings of a *pro se* litigant liberally, *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991), *pro se* litigants must follow the same procedural rules that govern other litigants, *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir.1994). Nonetheless, the Court considers the arguments raised in the surreply and finds they are without merit, as discussed below.

entitled to relief under 28 U.S.C. § 2255, and he therefore has no entitlement to an evidentiary hearing. After careful review of the submissions of the parties, I recommend that Petitioner's § 2255 Motion be denied and this case dismissed.

## I.  Background Facts[2] and Procedural Posture

On April 4, 2011, Rivera and his girlfriend, Valentina Gonzalez, got into an argument, which prompted Valentina to call her parents, Carlos and Lorraine Gonzalez, who in turn called 911. Carlos and Lorraine left for Rivera's apartment building where they found him and Valentina arguing in the street. Carlos confronted Rivera, who produced a pistol from his waistband, pointed it at Carlos, and threatened to kill him. Rivera then grabbed Valentina and they walked to a bus stop, leaving Carlos and Lorraine behind. Lorraine then placed a second call to the police dispatcher.

Officer Martin Smith responded to the call and found Rivera and Valentina at the bus stop. As he got out of his vehicle, Officer Smith observed Rivera hand something to Valentina. Officer Smith restrained both Rivera and Valentina in handcuffs and found a pistol in Valentina's waistband. Valentina later testified that Rivera foisted the pistol on her when Officer Smith arrived.

On May 11, 2011, the grand jury returned a single-count indictment charging Rivera with being a "felon in possession of a firearm" in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On October 18, 2011, a jury unanimously found Rivera guilty of this charge, *Doc. 1* at 2; *CR Doc*. 75,[3] and he was subsequently sentenced to a

---

[2] The facts are derived from the Tenth Circuit Court of Appeals opinion affirming Rivera's conviction, (*CR Doc. 146-1*), and do not appear to be in dispute.

[3] The Court refers to documents filed in the criminal case as "CR Doc." and those filed in the civil case as "Doc."

term of incarceration of 270 months (22.5 years). *CR Doc. 128*. Following an

unsuccessful appeal, (*CR Doc. 146)*, Rivera filed the § 2255 motion now before the

Court.

## II.  Rivera's Claims

Rivera contends that his trial counsel was ineffective because he: (1) failed to

object when the prosecutor presented evidence of a crime for which he was not

charged; (2) failed to move before the verdict for a mistrial when two jurors inadvertently

viewed evidence that had not been admitted; and (3) failed to object to a sentence

enhancement pursuant to the Armed Career Criminal Act (ACCA). Rivera further

complains that on appeal, counsel was ineffective when he failed to raise Confrontation

Clause and plain error arguments. Finally, Rivera asserts that the cumulative effect of

the alleged errors deprived him of a fundamentally fair trial.

## III. Discussion

### A.  Ineffective Assistance of Counsel

The Sixth Amendment provides for the right to effective assistance of counsel in

order to "protect the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S.

668, 684 (1984). Similarly, an appeal "is not adjudicated in accord with due process of

law if the appellant does not have the effective assistance of an attorney." *Evitts v.

Lucey*, 469 U.S. 387, 396 (1985). "To prevail on an ineffective assistance of counsel

claim under *Strickland*, a petitioner must show: (1) 'counsel's performance was deficient'

and (2) 'the deficient performance prejudiced the defense.'" *Crawley v. Dinwiddie*, 584

F.3d 916, 922 (10th Cir. 2009) (quoting *Strickland*, 466 U.S. at 687).

The *Strickland* test demands that the defendant establish that the attorney's

"representation fell below an objective standard of reasonableness" by showing that "counsel's errors were so serious as to deprive the defendant of a fair trial." *Williams v. Taylor*, 529 U.S. 362, 390 (2000) (quoting *Strickland*, 466 U.S. at 687). The Court must give "considerable deference to an attorney's strategic decisions" and "'recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690).

Moreover, if defendant fails to prove actual prejudice, the court need not address whether counsel's performance was deficient. "Prejudice is shown if defendant establishes a reasonable probability that the outcome of the trial, sentencing, or appeal would have been different had counsel raised the omitted claim or argument." *United States v. Hill*, No. CR-05-111-L, 2009 WL 1531533 (W.D. Okla. June 1, 2009) (citing *Neill v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001), *cert. denied*, 537 U.S. 835 (2002)).

**1.  Trial Counsel's Failure To Object During Prosecution's Case In Chief**

Rivera contends that he was prejudiced by a variance to which his attorney failed to object. "'A variance arises when the evidence adduced at trial establishes facts different from those alleged in an indictment.'" *Dunn v. United States*, 442 U.S. 100, 105 (1979). A variance is reversible error when it affects the substantial rights of the accused. *Rogers v. Gibson,* 173 F.3d 1278, 1287 (10th Cir. 1999) (internal quotations and citation omitted. The substantial rights of the accused are affected when "the defendant is prejudiced in his defense because he cannot anticipate from the indictment what evidence will be presented against him or is exposed to the risk of double

jeopardy." *Hunter v. New Mexico*, 916 F.2d 595, 599 (10th Cir. 1990). Whether a

variance warrants a new trial is a question of law. *U.S. v. McClatchey*, 217 F.3d 823,

831 (10th Cir. 2000).

     At trial, the government presented testimony from both Carlos and Lorraine that

Rivera pointed a gun at Carlos' head and threatened to kill him. Rivera suggests that

this evidence could constitute an assault,[4] a crime for which he was not charged and

thereby resulted in a variance because it "broadened the basis for convicting the

petitioner beyond acts where were charged in the indictment." *Doc. 1* at 10. In

response, the government argues that the evidence was properly admitted to provide

context for the crime charged. The Court agrees.

     Uncharged acts are admissible as "*res gestae,*" defined by the Tenth Circuit as

other acts, not subject to Federal Rule of Evidence 404(b),[5] that are inextricably

intertwined with the charged offense. *See United States v. Ford*, 613 F.3d 1263, 1267

(10th Cir. 2010); *United States v. McVeigh*, 153 F.3d 1166, 1203 (10th Cir. 1999)

(describing *res gestae* evidence as "inextricably intertwined with proper evidence").

"Evidence of other crimes should not be suppressed when those facts come in as *res

gestae* – as part and parcel of the proof of the offense charged in the indictment."

*United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995) (internal citation and

quotations omitted).

     In order to establish a violation of the federal felon-in-possession charge, "the

---

[4] The Tenth Circuit has defined assault as "an attempted battery" or as "placing another in reasonable apprehension of a battery." *U.S. v. McKinney*, 17 F. App'x 808, 811 (10th Cir. 2001) (unpublished).

[5] Fed. R. Evid. 404(b) prohibits the admission of evidence of a "crime, wrong , or other act  . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Civ. P. 404(b)(1).  However, the evidence may be permitted for another purpose.  Fed. R. Civ. P. 404(b)(2).

government had to prove: (1) that [Rivera] had previously been convicted of a felony, (2) that he thereafter knowingly possessed a firearm, and (3) that such possession was in or affected interstate commerce." *United States v. Jameson*, 478 F.3d 1204, 1208-09 (10th Cir. 2007) (citing 18 U.S.C. § 922(g)(1)). Evidence that Rivera pointed a gun at Carlos' head not only provided context for the crime charged, it was part and parcel of the proof that Rivera knowingly and intentionally possessed a firearm on the date charged in the indictment. Rivera could hardly have been surprised that that such evidence would be used to establish the second element of the crime for which he was on trial. His attorney's performance was not deficient for failing to object to this properly admitted evidence.

### 2. <u>Trial Counsel's Failure to Immediately Move for a Mistrial when Unadmitted Evidence was Inadvertently Given to Jurors</u>

Prior to trial, the government filed a motion in limine to admit audio recordings of the two 911 calls made by Lorraine to the police. *CR Doc. 33*. In their reply brief, (*CR Doc. 55*), however, the government withdrew its request to admit the first of those phone calls as evidence at trial, and the Court denied its admission on that basis (*Doc. 59* at 1). During deliberations, the jury sent out a note advising the Court that during the trial, two of its members inadvertently saw a transcript of Lorraine's first call to 911. In the note, the jury asked to see the transcript of the first 911 call if it had been admitted (*CR Doc. 72*). The Court responded with a curative instruction that the transcript had not been admitted into evidence and that it was not to be considered by the jury it in its deliberations. *CR Doc. 71* at 2 and *CR Doc. 108* at 3-4.

Rivera complains that his counsel failed to seek a mistrial on this basis before the jury reached a verdict. Instead, a day after the verdict, counsel filed a motion for

Declaration of Mistrial (*CR Doc. 78*) and a Motion for a New Trial (*CR Doc. 86*),[6] based on the inadvertent disclosure of the first 911 call. Both motions were denied. *CR Docs. 107, 108*. Judge Hansen denied the motion for mistrial on the basis that such a motion cannot be granted after a verdict is rendered. *See CR-Doc. 108 at 3; United States v. Alvarez-Moreno*, 657 F.3d 896, 900-01 (9th Cir. 2011) (explaining that while Fed. R. Crim. P. 26.3 "does not state explicitly that a mistrial can be declared only *before* a verdict is rendered or a judgment entered, but that limitation is clearly the implicit assumption.") (emphasis in original).

Even assuming it was error for counsel to not move for a mistrial before the jury reached its verdict, Rivera has not shown, beyond his conclusory assertions, that the alleged error changed the outcome of the trial. Again, when alerted that two of the jurors had inadvertently viewed the transcript of the first rather than second 911 call, Judge Hansen immediately instructed the jury that it had not been admitted and could not be considered. *Doc. 108* at 4. Jurors are presumed to follow cautionary instructions from the court. *See United States v. Morgan*, 748 F.3d 1024, 1042 (10th Cir. 2014). "A cautionary instruction is ordinarily sufficient to cure any alleged prejudice to the defendant and declaring a mistrial is only appropriate where a cautionary instruction is unlikely to cure the prejudicial effect of an error." *Id.* at 1041 (citation and quotations omitted). Courts "look to see if the evidence will create so strong an impression on the jurors that they could not disregard it in their consideration of the case despite cautionary instructions." *Id.* (internal citation and quotations omitted).

---

[6] Rivera's counsel initially filed a Motion for a New Trial and Motion for a Mistrial on 10/28/11 as CR Doc. 78, and 86, respectively, which were withdrawn on 11/4/11 (CR Doc. 87), but subsequently refiled on 12/6/11 (CR Docs. 94 and 95).

A review of the record demonstrates the evidence in the first phone call was not so prejudicial that a cautionary instruction was unlikely to cure any prejudicial effect. In the first phone call, Lorraine merely told the dispatcher that Rivera and Valentina were engaged in a domestic dispute, that she was scared, that she and her husband were on their way to their daughter's location and gave the police Rivera's address and physical description. *CR Doc. 33* at 1-2. These facts are evident and innocuous when compared with the admitted second phone call in which Lorraine described how Rivera was dressed, that Rivera had a gun, and he had pointed it at Carlos. *Id.* at 2. Lorraine explained that Rivera had taken Valentina, they were walking to the bus stop, and she did not know what Rivera was going to do to her daughter. *Id.* At the end of the second call, Lorraine again emphasized that Rivera had a gun and "he was dangerous." *Id.* at 3. Thus, the inadvertent disclosure of the transcript of the first phone call was easily cured by the Judge Hansen's instruction to disregard it.  The Court therefore cannot say that Rivera was prejudiced by his counsel's failure to seek a mistrial before the jury rendered its verdict.

### 3.  Trial Counsel's Failure to Object at Sentencing

Citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000), Rivera contends that his attorney was ineffective for failing to object to the sentencing court's enhancements for prior felony convictions. While his petition is not a model of clarity, it appears Rivera argues first that the *Apprendi* decision requires the facts of his prior convictions be charged, instructed upon, and proven to a jury. *Doc. 1* at 17 (the "jury never received an instruction to consider the petitioner's total prior criminal history in order to determine whether he could be enhanced pursuant to the [ACCA]."). The Tenth Circuit Court of

Appeals has rejected this argument. *See U.S. v. Dorris*, 236 F.3d 582 (10th Cir. 2000);

*U.S. v. Harris*, 447 F.3d 1300 (10th Cir. 2006).

> The ACCA, states in pertinent part:

>> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, ***committed on occasions different from one another,*** such person shall be fined under this title and imprisoned not less than fifteen years, and notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1) (emphasis added).   "The imposition of the ACCA requires: (1) that

at least three prior convictions exist, (2) that those convictions were either for a violent

felony or a serious drug offense, and (3) that the prior offenses where committed on

different occasions from one another." *Harris*, 447 F.3d at 1303. These elements are

properly assessed by the sentencing court, not the jury. *Id.* at 1303-04.

> In *Apprendi*, the Supreme Court expressly excluded a defendant's prior criminal

history from a jury's consideration, holding that *"[o]ther than the fact of a prior

conviction*, any fact that increases the penalty for a crime beyond the prescribed

statutory maximum must be submitted to a jury, and proved beyond a reasonable

doubt."  *Id.* (quoting *Apprendi*, 530 U.S. at 490) (emphasis in original). In providing for

this exception, the Supreme Court explained that the "use of a prior conviction to

increase a defendant's sentence does not implicate the same concerns as other

sentencing enhancements because the defendant's previous conviction was

accompanied by all of the procedural safeguards required in a criminal prosecution."

*Dorris,* 236 F.3d at 587-88 (citing *Apprendi*, 488-489). This exception was reaffirmed in

*United States v. Booker,* 543 U.S. 220, 244 (2005) – "[a]ny fact (other than a prior

conviction) which is necessary to support a sentence exceeding the maximum . . . must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Rivera does not deny that he had three prior felony convictions, and those convictions fall squarely within the exception set out in *Apprendi*.

Rivera next argues that his counsel failed to object to an enhanced sentence for previous crimes that were "related offenses." While Rivera had three prior felony assault convictions, he contends that two of the assaults were "related" and should have been counted only once. Rivera refers to the sentencing guidelines, specifically U.S.S.G. § 4A1.2, which requires the Court to ascertain whether prior sentences are counted separately or combined for the purpose of determining a defendant's criminal history category in order to find the applicable guideline range for a sentence under the guidelines.[7]

As the Tenth Circuit has made clear, however, the guidelines do not control the application of the Armed Career Criminal Act (ACCA) which imposes a special mandatory 15-year prison term upon felons who unlawfully possess a firearm and who have three or more convictions for violent felonies. 18 U.S.C. § 924(e)(1).

> Whether a case is "related" under the USSG "is broader than the category of cases in which the prior offenses will be deemed to have occurred on the same occasion for purposes of the ACCA." *United States v. Hobbs*, 136 F.3d 384, 388 (4th Cir. 1998); *see also Brown*

---

[7] U.S.S.G. 4A1.2(a)(2) instructs:

(2) If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence. See also § 4A1.1(e).

> *v. United States*, 636 F.3d 674, 676 (2d Cir. 2011) (concluding reliance on § 4A1.2 in the ACCA context is misplaced); *United States v. Medina–Gutierrez*, 980 F.2d 980, 983 (5th Cir. 1992) (stating whether offenses are considered "related" under § 4A1.2 is irrelevant in the ACCA context); *United States v. Maxey*, 989 F.2d 303, 307 (9th Cir.1993) (declining to apply § 4A1.2 case law to an ACCA enhancement because the two provisions do not relate*); cf. United States v. Harris*, 369 F.3d 1157, 1168 (10th Cir.2004) (rejecting the application of § 4A1.2 in determining whether convictions are separate pursuant to 21 U.S.C. § 841(b)(1)(A*)); United States v. De Jesus Mateo*, 373 F.3d 70, 74 (1st Cir.2004) ("Whether prior convictions count for purposes of 21 U.S.C. § 841(b)(1)(A) is a matter of statutory construction, not Guideline application.")

*United States v. Delossantos*, 680 F.3d 1217, 1220 n.3 (10th Cir. 2012) (affirming because convictions used to qualify for ACCA enhancement were, as required by the statute, "committed on occasions different from one another").

The Presentence Investigation Report (PSR) prepared by probation revealed that Rivera was convicted of three felony assaults – one committed on November 5, 2004, another committed on April 27, 2006, and a third assault committed on August 5, 2006. Each assault, clearly committed on occasions different from one another, led to a conviction for a violent felony.[8] Thus, the Court properly used them to enhance Rivera's sentence under the ACCA. Accordingly, Rivera's attorney was not deficient for failing to interpose a meritless objection to the enhanced sentence.

Rivera additionally argues that his attorney failed to object "when the court

---

[8] 18 U.S.C. § 924(e)(2)(B) states:

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--

    (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

    (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

improperly counted the petitioner's previous drug conviction as a 'Serious Drug Offense' in order to apply the A.C.C.A." *Doc. 1* at 19. However, the record is clear that the sentencing court did not base the ACCA enhancement on a serious drug offense, but on the three prior violent felonies, discussed above.

In Rivera's Surreply, he complains that his counsel failed to object that his sentence was much harsher than other defendants who are "similarly situated." Courts review a sentence for reasonableness, which includes both a procedural component, the method by which a sentence was calculated, and a substantive component, relating to the length of the sentence. *See United States v. Smart*, 518 F.3d 800, 803 (10th Cir. 2008). Whether his sentence was harsher than other similarly situated defendants relates to the length of his sentence. Before imposing a sentence, the court must consider the several factors found in 18 U.S.C. § 3553, including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  "[W]hether any such disparity justifies a sentencing variance in a given case raises a separate question . . . of substantive reasonableness. . . ." *Smart*, 518 F.3d at 805. If a sentence is within the correctly-calculated guidelines range, there is a presumption of reasonableness.  *United States v. Kristl*, 437 F.3d 1050, 1053-55 (10th Cir. 2006). The defendant may rebut this presumption by demonstrating the sentence is unreasonable when viewed under the §3553(a) factors. *Id.* at 1054-55.

Under the guidelines, Rivera's applicable sentence range was calculated to be from 262 to 327 months imprisonment. The Court, having considered all of the § 3553(a) factors, imposed a 270-month sentence, just above the lower end of that

range. *CR Doc. 160* at 10. As Rivera's sentence is within the guidelines range, it is presumptively reasonable.

Rivera lists six cases under the title "Similarly Situated Defendant's" [sic], (*Doc. 11* at 4), involving other defendants who were convicted of being a felon in possession of a firearm but were given lower sentences. These other defendants are not similarly situated to Rivera, however, because each of them pled guilty to the charge.[9]

"The Guidelines offer up to a three-point reduction in a defendant's offense level for admitting the truth of the charges against him." *See U.S. v. Aguayo-Gonzalez*, 472 F.3d 809 (2007) (citing U.S.S.G. § 3E1.1(a) and (b)). Rivera's presentence report indicates that he "did not enter a guilty plea or accept responsibility for the instant offense.  Instead, he took the case to trial and was found guilty." PSR at 6. Thus, Rivera did not receive a downward adjustment of "base offense level" that is available only for defendants who have accepted responsibility. *Id*. Rivera is, therefore, distinguishable from those defendants he contends are similarly situated. *See, e.g.*, *Aguayo-Gonzalez*, 472 F.3d at 812 (for purposes of § 3553(a)(6), a defendant who does not accept responsibility prior to trial is distinguishable from those who accept responsibility). Because Rivera fails to rebut the presumption that his sentence was reasonable, his attorney was not obligated to raise an objection without substance.

### 4.  **Appellate Counsel's Failure to Raise a Confrontation Clause Argument**

At trial, Valentina testified that she had never admitted to being in possession of

---

[9] See, *United States v. Couchman*, 329 F. App'x 836, 837 (10th Cir. 2009); *United States v. Nolan*, 342 F. App'x 368, 370 (10th Cir. 2009); *United States v. James*, 303 F. App'x 632, 634 (10th Cir. 2008); *United States v. Riggs*, 302 F. App'x 805, 807 (10th Cir. 2008); *United States v. Eatman*, 460 F. App'x 790, 791 (10th Cir. 2012); and *United States v. Bias*, 569 F. App'x 632, 633 (10th Cir. 2014).

a firearm. *CR Doc. 146-1* at 3. During cross-examination, Rivera's counsel sought to

impeach her testimony with a copy of a "Probation Violation Admission Agreement"

signed by Valentina, in which she indeed admitted to having possessed a firearm. *Id.*

The Court sustained the prosecutor's objection to the use of the document, however, so

defense counsel was unable to impeach Valentina with her prior inconsistent statement.

*Id.* at 4-5. Rivera contends that his appellate counsel was ineffective because he failed

to raise the issues of: (1) whether exclusion of that statement violated his rights under

the Confrontation Clause of the Sixth Amendment, and (2) whether it was plain error for

the District Court to fail to raise that constitutional issue *sua sponte. Doc. 1* at 20-21.

The government counters that the "constitutional right to confront witnesses"

issue was raised in the appellate court (*Doc. 7* at 8), but that is not correct. The Tenth

Circuit found that

> Rivera waived any argument that the district court violated Rivera's
> rights under the Confrontation Clause of the Sixth Amendment by not
> permitting Rivera to impeach Valentina with the Probation Violation
> Admission Agreement. Because the argument was not raised below,
> "we will not address the constitutional issue in the absence of a
> conclusion that it was plain error for the district court to fail to raise
> the constitutional issue sua sponte." *United States v. Solomon*, 399
> F.3d 1231, 1237–38 (10th Cir.2005). That said, the plain error
> standard does not apply "where the defendant has failed to argue on
> appeal that the district court committed plain error in not raising the
> constitutional issue sua sponte." *Id.* at 1238. Because Rivera did not
> mention plain error in his opening brief, we deem it waived.

United States v. *Rivera,* 554 F. App'x 735, 739 (10th Cir. 2014). Rather, the Tenth

Circuit found that the trial court abused its discretion and that it should have permitted

use of the prior inconsistent statement to impeach Valentina pursuant to Federal Rule of

Evidence 613. *Id.* at 739-40. The Tenth Circuit ultimately held that error under the rules

of evidence to be harmless, however. *Id.* at 740-741.

"The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986).  A defendant not only has the right to physically confront a witness, but also the opportunity to cross-examine the witness. *Id*. Trial judges have wide latitude to impose reasonable limits on cross-examination, as "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (internal quotation and citation omitted). "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness." *Id*. at 680.

Here, the Tenth Circuit found that the trial court erred in its conclusion that Valentina's admission in the Probation Violation Admission Agreement was consistent with her trial testimony. Because it was, in fact, ***inconsistent*** with Valentina's testimony at trial, Rivera should have been permitted to cross-examine her with it. It follows then that Rivera has met his burden under the Confrontation Clause: a reasonable jury might have received a significantly different impression of Valentina's credibility had his counsel been allowed to pursue this proposed line of questioning.

 Nonetheless, the harmless-error doctrine applies to Confrontation Clause cases. *Van Arsdall*, 475 U.S. at 684.  "The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might

nonetheless say that the error was harmless beyond a reasonable doubt." *Id*. This

inquiry is resolved by the consideration of a variety of factors, including "the importance

of the witness' testimony in the prosecution's case, whether the testimony was

cumulative, the presence or absence of evidence corroborating or contradicting the

testimony of the witness on material points, the extent of cross-examination otherwise

permitted, and of course, the overall strength of the prosecution's case." *Id*.

And, "[t]o constitute plain error under the Confrontation Clause, the constitutional

error must be (1) obvious, and (2) affect substantial rights." *United States v. Perez*, 989

F.2d 1574, 1582 (10th Cir. 1993). A constitutional error affects substantial rights when

there is "a reasonable probability that, but for the error claimed, the result of the

proceeding would have been different." *United States v. Pablo*, 696 F.3d 1280, 1293

(10th Cir. 2012).

In Rivera's direct appeal, the Tenth assessed whether failing to allow

impeachment was harmless, albeit in the context of Fed. R. Evid. 613. The Tenth Circuit

considered similar factors as those set forth above and found:

> First and foremost, both Carlos and Lorraine Gonzalez testified that
> they observed Rivera holding a gun during their encounter in the
> street. An attack on Valentina's credibility would not change the fact
> that the testimony of Carlos and Lorraine was sufficient to support
> Rivera's conviction. In urging that the government's case rose and
> fell with Valentina's credibility, Rivera overlooks the testimony given
> by Carlos, Lorraine, and Officer Smith.
>
> Second, the jury had already heard Officer Smith testify that as he
> approached he saw Rivera hand something to Valentina, and both
> Officer Smith and Valentina testified that the pistol was found in
> Valentina's waistband when she was arrested at the bus stop. As a
> result, the jury already knew that Valentina had "possessed" a
> firearm which was the only fact Rivera's counsel intended to highlight
> via impeachment. . . . Further, impeachment on such a trivial point
> would not have had a "substantial influence" on the outcome of the

trial.

*Rivera*, 554 F. App'x 740-741. The Court finds that any violation of Rivera's rights under

the Confrontation Clause are likewise harmless because Rivera cannot establish that

the result would have been any different had he been able to use Valentina's prior

inconsistent statement. Therefore, Rivera's appellate counsel's failure to raise the issue

was not prejudicial.

### B. Cumulative Error

"Cumulative error is present when the 'cumulative effect of two or more

individually harmless errors has the potential to prejudice a defendant to the same

extent as a single reversible error.'" *Workman v. Mullin*, 342 F.3d 1100, 1116 (10th Cir.

2003).  "A cumulative-error analysis aggregates all errors found to be harmless and

analyzes whether their cumulative effect on the outcome of the trial is such that

collectively they can no longer be determined to be harmless." *United States v. Barrett*,

496 F.3d 1079, 1121 (10th Cir. 2007) (quoting *United States v. Toles*, 297 F.3d 959,

972 (10th Cir.2002)) (internal quotation marks omitted). In reviewing a case for

cumulative error, courts conduct the same inquiry as for individual error and consider

"whether the defendant's substantial rights were affected by the cumulative effect of the

harmless errors." *Id.*; *U.S. v. Harlow*, 444 F.3d 1255, 1269 (10th Cir. 2006). Only actual

errors are considered, not the effect of non-errors. *Workman*, 342 F.3d at 1116.

Here, two harmless errors could be considered for cumulative error analysis:

(1) trial counsel's failure to move for a mistrial prior to the verdict, and (2) his appellate

counsel's failure to raise Confrontation Clause and plain error issues before the

appellate courts. However, these two errors, even when considered in the aggregate,

do not constitute reversible error because there is not a reasonable probability that the result of the proceeding would have been different for the reasons set forth above.

Wherefore,

IT IS HEREBY RECOMMENDED that Rivera's Motion to Amend *(Doc. 11)* be construed as a surreply brief and given consideration as such.

IT IS FURTHER RECOMMENDED that Rivera's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (*Doc. 1*) be denied and the case dismissed with prejudice

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

_____
UNITED STATES CHIEF MAGISTRATE JUDGE